HOUSTON, Justice.
Darryl Pierrie Hall was convicted of three counts of robbery in the first degree, violations of Ala.Code 1975, § 13A-8-41, and four counts of kidnapping in the second degree, violations of Ala.Code 1975, § 13A-6-44. Hall was sentenced to life imprisonment on each of the robbery convictions, and to 20 years’ imprisonment on each of the kidnapping convictions. The Court of Criminal Appeals affirmed Hall’s convictions, with an unpublished memorandum. (No. CR-00-1180, October 18, 2002) — So.2d - (Ala.Crim.App.2002) (table). We granted Hall’s petition for a writ of certiorari, and we now affirm the judgment of the Court of Criminal Appeals.

I.Procedural Histo'ry

After a transfer to the circuit court from the juvenile court, Hall was charged with three counts of first-degree robbery, four counts of second-degree kidnapping, one count of first-degree rape, and one count of first-degree sexual assault for events that allegedly occurred in connection with the robbery of a Montgomery day-care center. Hall entered a plea of not guilty to all the charges. He was subsequently tried on three separate occasions.
At Hall’s first trial, the jury found him not guilty of rape and sexual abuse, but was unable to reach a verdict on the robbery and kidnapping charges, and a mistrial was declared. In Hall’s second trial, the jury was again unable to reach a verdict on the robbery and kidnapping charges and another mistrial was declared. Hall’s third trial resulted in the jury finding Hall guilty of the robbery and kidnapping charges. (Unless otherwise indicated, hereinafter the term “trial” in this opinion refers to Hall’s third trial.)
Hall filed a motion for a judgment of acquittal or, in the alternative, a motion for a new trial. After a hearing, the trial court denied Hall’s motion.
The Alabama Court of Criminal Appeals affirmed Hall’s convictions and sentences in an unpublished memorandum.

II.Issues on Appeal

There are two issues before this Court: Whether the trial court’s denial of Hall’s motion for a judgment of acquittal or for a new trial, which was based on claims of 1) perjured testimony and 2) ineffective assistance of trial counsel, was proper; and whether Hall’s confession was voluntary and thus properly admitted into evidence.

III.Analysis

A. The denial of Hall’s postverdict motion

Hall’s motion for a judgment of acquittal or for a new trial was based on claims of perjured testimony and ineffective assistance of trial counsel. “ ‘ “It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably *1082 shows the trial judge to be in error.” ’ ” Hosea O. Weaver & Sons, Inc. v. Towner, 663 So.2d 892, 895 (Ala.1995)(quoting Kane v. Edward J. Woerner & Sons, Inc., 543 So.2d 693, 694 (Ala.1989), quoting in turn Hill v. Sherwood, 488 So.2d 1357 (Ala.1986)).

1. Perjured testimony

During his trial, Hall asserted an alibi defense; he contended that at the time of the robbery and kidnapping, he was at home making telephone calls to friends. The State countered Hall’s alibi defense with the testimony of Charles Chambers, an employee of BellSouth Telephone Company. Chambers testified that had Hall made the outgoing calls he claimed to have made at the time of the robbery BellSouth’s records would have revealed those calls; Chambers further testified that the records did not indicate that any such calls had been made.
After the trial, it was discovered that Chambers’s testimony was incorrect. Chambers had testified that records of outgoing telephone calls from BellSouth customers were kept for 18 months; however, the records were kept for only 60 days and the data was then erased. Chambers testified as follows in a subsequent affidavit:
“At the time I testified on January 26, 2001, it was my understanding that local outgoing call information was kept for a period of eighteen months.
“I have since learned that my testimony on January 26, 2001, was erroneous. In fact, local outgoing call information is not kept for eighteen months ... information for flat rate subscribers has a retention period of sixty (60) days, like the incoming call records. All of the accounts about which I testified were flat rate subscribers.
“The time period that was being reviewed with regard to the above referenced telephone accounts was beyond [BellSouth’s] retention period.”
Therefore, after 60 days, there would have been no records to indicate whether Hall had or had not made the telephone calls he claimed to have made at the time of the incident forming the basis for the charges against him.
Hall contends that, because of this false testimony, the trial court should have granted him a new trial.
In Ex parte Frazier, 562 So.2d 560, 569-70 (Ala.1990), this Court adopted the following standard:
“In order to grant a motion for new tidal alleging perjured testimony, the trial court must be reasonably well satisfied 1) that testimony given by a witness at trial is false; 2) that there is a significant chance that had the jury heard the truth, it would have reached a different result; 3) that the evidence tending to prove the witness’s perjury has been discovered since the trial; and 4) that that evidence could not have been discovered before or during trial by the exercise of due diligence.”[1]
The first requirement established in Frazier is “that testimony given by a witness at trial is false.” The record clearly indicates that Chambers’s testimony was false. In fact, Chambers himself states in his affidavit that the testimony he gave during Hall’s trial “was erroneous.”
The second requirement established in Frazier is “that there is a significant chance that had the jury heard the truth, it would have reached a different verdict.” In the present case, this requirement has not been met.
*1083 During the hearing on Hall’s motion for a new trial, a juror (“Juror L.”) testified, among other things, that Chambers’s testimony concerning the telephone records was not given a great deal of weight by a majority of the jurors in reaching the verdict.[2] In its order denying Hall’s motion for a new trial, the trial court stated:
“[Hall] contends that the jury was left with a false impression of the existence of phone records of BellSouth. This evidence was offered to rebut the defense of alibi by [Hall], Testimony and affidavits of the two witnesses at trial were considered at the hearing. The witnesses testified that their original testimony as to the length of time the records of BellSouth are retained was in error. In fact, testimony from the trial did not indicate that there were no calls, but ‘we have no record of those — any calls for those days.’ ... Furthermore, [Juror L.] made it clear that in the deliberations of the jury, the jury ignored the evidence of the phone records. [Hall’s] claim that these records left a false impression with the jury is not an issue and is therefore moot.”
We agree with the trial court’s ruling that had the jury heard the facts concerning the telephone records the outcome of the trial would not have been altered. The telephone records, like the other evidence, merely presented a conflict the jury was required to resolve in assessing Hall’s guilt.
The third requirement established in Frazier is “that [the] evidence tending to prove the witness’s perjury has been discovered since the trial.” This requirement has been met; the confusion over the telephone records was not discovered until after the trial and was not resolved until Chambers gave his affidavit following the trial.
The fourth and final requirement established in Frazier is “that [the] evidence could not have been discovered before or during trial by the exercise of due diligence.” This requirement goes squarely against Hall. Hall’s motion for a judgment of acquittal or for a new trial followed his third trial. The evidence concerning the telephone records had already been presented at the two previous trials. Hall had every opportunity to evaluate Chambers’s testimony before the start of the third trial, and he failed to exercise “due diligence” in finding the falsity of that testimony.
Therefore, because the second and fourth requirements of Frazier have not been established, the trial court’s denial of Hall’s motion for a new trial based on Hall’s perjured-testimony claim was not plain and palpable error; thus, the Court of Criminal Appeals’ affirmance of that denial was proper.

2. Ineffective assistance of trial counsel

Hall’s next argument is that his motion for a new trial should have been granted because, he says, his trial counsel rendered ineffective assistance. In his briefs to this Court, Hall asserts several specific ways in which, he argues, his trial *1084 counsel was ineffective. However, we granted his petition for a writ of certiorari to consider only one aspect of this argument: whether a defendant who is not entitled to a new trial under Frazier because his trial counsel failed to exercise due diligence in finding false testimony is entitled to a new trial because trial counsel was ineffective.
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established the standard for a claim of ineffective assistance of trial counsel:
“First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.”
Therefore, to obtain postconviction relief on a claim of ineffective assistance of counsel under Strickland, Hall was required to prove “(1) that counsel did not provide reasonably effective assistance and (2) that counsel’s deficient performance prejudiced the petitioner.” Ex parte Land, 775 So.2d 847, 850 (Ala.2000).
We are presented with the issue whether Hall’s counsel’s failure to establish the fourth requirement of Frazier (i.e., her failure to use due diligence in discovering the falsity of Chambers’s testimony before or during the trial) is the equivalent of a showing under the first prong of Strickland that her performance was deficient. In other words, does counsel’s failure to identify Chambers’s testimony as false amount to the deficient performance contemplated in Strickland.[3] However, it is not necessary to resolve this issue because we find that the second prong of the Strickland standard has not been satisfied.
In discussing the second prong of the Strickland standard, the United States Supreme Court stated:
“An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.
[[Image here]]
“... The defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.”
466 U.S. at 691-94,104 S.Ct. 2052.
It is reasonable to assume that if the second requirement of Frazier is established (“that there is a significant chance that had the jury heard the truth, it would have reached a different result”), then the second prong of Strickland (“there is a reasonable probability that ... the result of the proceeding would have been different”) is also satisfied. Conversely, as in this case, when the second requirement of Frazier has not been established, then the second prong of Strickland is likewise not satisfied.
*1085 We cannot say that Hall was prejudiced by his counsel’s failure to discover Chambers’s false testimony because we have already determined that truthful testimony as to the telephone records would not have altered the outcome of the trial. “An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.” 466 U.S. at 691, 104 S.Ct. 2052. Consequently, Hall has failed to establish a claim of ineffective assistance of counsel because the second prong of the Strickland standard has not been satisfied.
Therefore, we find that the trial court’s denial of Hall’s motion for a new trial based on ineffective assistance of counsel was not plainly and palpably wrong, and we affirm the judgment of the Court of Criminal Appeals as to this issue.

B. Hall’s confession

 A child who is taken into custody must be informed of his Miranda[4] rights and, pursuant to Rule 11, Ala. R. Juv. P., he must be informed that he has the right to communicate with his parent or guardian and, if necessary, that reasonable means will be provided for him to do so. Smith v. State, 623 So.2d 369, 371 (Ala. Crim.App.1992). Concerning the custodial questioning of a child, Rule 11(B), Ala. R. Juv. P., states:
“Before the child is questioned about anything concerning the charge on which the child was arrested, the person asking the questions must inform the child of the following rights:
“(1) That the child has the right to counsel;
“(2) That if the child is unable to pay a lawyer and if the child’s parents or guardian have not provided a lawyer, one can be provided;
“(3) That the child is not required to say anything and anything the child says may be used against the child;
“(4) That if the child’s counsel, parent, or guardian is not present, then the child has the right to communicate with them, and that, if necessary, reasonable means will be provided to the child to do so.”
Thus, subsections (1), (2), and (3) of Rule 11(B) require that a child be informed of the same information as in the Miranda warning, and subsection (4) adds to the Miranda warning the requirement that a child must be informed that the child can communicate with his or her parent. E.C. v. State, 623 So.2d 364, 366 (Ala.Crim.App.1992). The rights afforded by this rule are commonly referred to as “juvenile Miranda” rights or “super-Miranda ” rights. Russell v. State, 739 So.2d 58, 66 (Ala.Crim.App.1999).
If, during custodial interrogation, a child makes an ambiguous request to communicate with his parent, the police have an affirmative duty to clarify that ambiguous request before they resume questioning the child. E.C., 623 So.2d at 367. In other words, when a child makes a statement during a custodial interrogation that may be construed as indicating a desire to communicate with his or her parent, the interrogation must be narrowed to one subject only: clarifying the child’s ambiguous request to speak with a parent. Id. Any statements taken after a child has made an ambiguous request to communicate with a parent, but before an effective waiver of that right has been clarified, are in violation of the child’s juvenile Miranda rights. Id. (citing Robinson v. State, 574 So.2d 910, 914 (Ala.Crim.App. 1990)).
*1086 In E.C., after the interrogating officer had given the accused 16-year-old his juvenile Miranda rights, the following exchange took place:
“ ‘Q.... Now do you understand what I’ve just told you?
“ A. Yes, sir.
“ ‘Q. All right, do you want [your mother] down here?
“ A. I can’t ... I ain’t got nobody to get her down here. I ain’t got no....
“ ‘Q. Well, have you got a lawyer?
“ A. I can get my ... yes, my mama got a lawyer.
“ ‘Q. Well, you want ... do you want to give me a statement?
“ A. What is that?
“ ‘Q. Huh?
“ A. What? I’m sorry?
“‘Q. Do you want to give me a statement now, after I’ve read you all these rights?
“ A. What a statement [sic]?
“ ‘Q. The taped statement I’m fixing to get from you.
“ A. Oh, yes, sir.
“ ‘Q. I had to read you all this.
“ A. Oh, yes, sir.
“ ‘Q. And, you ... you want to ... you want to talk about this incident.
“ A. Yes, sir.’ ”
623 So.2d at 366. The Court of Criminal Appeals held that this exchange amounted to an ambiguous request by the defendant to speak with his mother and that the failure of the interrogating officer to clarify that request before resuming questioning mandated the suppression of the child-defendant’s statements. Id. at 365. In response to the interrogating officer’s testimony as to how he had interpreted the child-defendant’s answer, the Court of Criminal Appeals stated: “The fact that the response was subject to ‘interpretation’ at all only underscores the fact that it was ambiguous to begin with.” Id. at 367.
In this case, Hall, who was 15 years old, was arrested at his home. At the time of the arrest, both Hall and Hall’s father told the police that they wanted Hall’s father to be present during any questioning. The police told them that the father could be present. ' The father went to the police station and waited outside the interrogation room.
When Hall was brought to the police station, he was taken into the interrogation room, handcuffed to the table in the room, and read his rights pursuant to Miranda and Rule 11, Ala. R. Juv. P. The parties dispute what occurred next.
According to Hall, before the police began questioning him, he asked, “Where is my daddy?” Hall told the police that he “thought [his] daddy was supposed to be [there] when [they were] questioning [him].” Hall testified that he was told not to worry about it, that his father was upstairs. Hall testified that he stood up to the police questioning at first, but he eventually told them “what they wanted to hear,” stating, ‘Tes, sir, keep them from attacking me, sir. I thought my dad was supposed to be in here.”
Additionally, Hall’s father testified that, at one point, a detective came out of the interrogation room complaining of a headache. Hall’s father testified that he asked the detective if they had begun questioning his son, and the detective replied, “He is lying but we will get it out of him.” Then the detective turned and went back into the interrogation room.
According to the police, after Hall was read his Miranda rights, he was specifically told, “You have the right to communicate with a parent or guardian before questioning, and if necessary, reasonable means will be provided to you to do so.” The State’s testimony indicated that Hall understood his rights, that he waived them, and that he freely spoke with the *1087 officers. The police officers testified that Hall never asked for his father to be present prior to confessing. Another of the interrogating officers testified that he knew that Hall’s father was at the police station and that he would have brought his father into the interrogation room if Hall had requested that he do so.
Therefore, Hall and the State presented conflicting evidence, which creates a question of fact to be resolved by the trial court:
“ ‘Where the evidence of voluntariness is conflicting, and even where there is credible testimony to the contrary, the trial judge’s finding of voluntariness must be upheld unless palpably contrary to the weight of the evidence. Ash v. State, 424 So.2d 1381, 1385 (Ala.Crim. App.1982).’ Whisenant v. State, 466 So.2d [995,] at 1001 [(Ala.Crim.App. 1984)]. The trial judge has a duty to resolve questions of fact regarding the voluntariness of a confession when presented with conflicting evidence on that issue. See Ex parte Johnson, [522 So.2d 234 (Ala.1988)]; Sales v. State, 432 So.2d 560 (Ala.Crim.App.1983). A finding of voluntariness need be supported only by a preponderance of the evidence. Jackson v. State, [516 So.2d 726 (Ala.Crim. App.1985)].”
Carr v. State, 545 So.2d 820, 824 (Ala. Crim.App.1989).
We find no reason to hold that the trial court’s determination that Hall’s statement was voluntary, based on the conflicting testimony of the police, on the one hand, and of Hall and his father, on the other, was contrary to the weight of the evidence. Therefore, we affirm the Court of Criminal Appeals’ judgment insofar as it holds that Hall’s confession was voluntary and that it was properly admitted into evidence at his trial.
For the aforementioned reasons, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
MOORE, C.J., and BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs specially.
SEE and JOHNSTONE, JJ., dissent.

. The Court adopted this standard "to be used in those cases in which a sentence of death has not been imposed.” Frazier, 562 So.2d at 569. A separate standard was promulgated in Frazier for evaluating perjured testimony in death-penalty cases.

. Most of Juror L.'s testimony at the hearing concerned her belief that Hall was innocent. However, pursuant to Rule 606(b), Ala. R. Evid., the trial court correctly considered only that part of Juror L.'s testimony that tended to support the verdict. Rule 606(b) states, in pertinent part:
"Upon an inquiry into the validity of a verdict ..., a juror may not testify in impeachment of the verdict ... as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon that or any other juror’s mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror’s mental process in connection therewith.... Nothing herein precludes a juror from testifying in support of a verdict...."

. Strickland spoke directly to counsel’s duty to investigate:
''[Cjounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.”
466 U.S. at 691, 104 S.Ct. 2052.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).