BRYAN, Judge.
On November 17, 2009, the Calhoun County Department of Human Resources (“DHR”) filed a petition in the Calhoun Juvenile Court (“the juvenile court”) alleging .that C.J.H. and S.H. (collectively referred to hereinafter as “the children”) were dependent because they did not have a parent or guardian able to provide for their support, training, or education. DHR further alleged that T.H., the father of the children (“the father”), had killed W.H., the mother of the children (“the mother”), and that the father had then committed suicide. DHR also filed a motion for ex parte temporary custody of the children; that motion was granted by the juvenile court the same day.
Shortly thereafter, C.T.H., the brother of the children (“the brother”); K.B., the children’s maternal aunt (“the maternal aunt”), and L.B., Jr., the children’s maternal uncle (“the maternal uncle”); and D.B., the children’s paternal aunt (“the paternal aunt”), filed separate petitions to intervene in DHR’s dependency action. The brother, the maternal aunt and the maternal uncle, and the paternal aunt all sought custody of the children. The paternal aunt alleged that DHR had placed the children in her custody shortly after the deaths of the mother and the father. The paternal aunt’s petition for custody was later amended to add the paternal aunt’s husband, J.R.B. (“the paternal uncle”), as a petitioner. The juvenile court subsequently ordered DHR to perform a home study of the residences of the brother, the maternal aunt and the maternal uncle, and the paternal aunt and the paternal uncle.
On May 3, 2010, the juvenile court entered an order finding the children dependent. The juvenile court awarded custody of the children to the paternal aunt,[1] awarded the brother “liberal” visitation with the children, and awarded the maternal aunt and the maternal uncle specific visitation with the children, including; 4 days during Thanksgiving holidays in even-numbered years; 1 week during Christmas holidays; 3 consecutive weeks during the summer; every weekend that the children have the following Monday off of school; and any time the maternal aunt and the maternal uncle were in Anniston for two consecutive days, provided they give the paternal aunt 48 hours notice of the visit. The juvenile court also ordered DHR “to supervise for a period of ... 12 months from the date of entry of this [ojrder,” and it held that “DHR shall provide counseling and all other services as may be necessary.” The juvenile court, in its judgment, required the paternal aunt to
“keep the child[ren] in the school of [her] choosing, but because th[e] child[ren are] accustomed to going to a public school and being involved in both classes with other non-related children and in public school related extracurricular activities, the [paternal aunt] shall not home school th[e] children] for a minimum of one full school year in order to provide the children] with as much normalcy as possible, due to the turmoil the childfren] ha[ve] endured.”
*117 The paternal aunt subsequently filed a motion to alter, amend, or vacate the judgment pursuant to Rule 59, Ala. R. Civ. P.[2] In her motion, the paternal aunt argued that the juvenile court’s judgment required her to keep the children in public school for one year, and she argued that such a provision was “unconstitutional as it takes away the custodial guardian’s right to direct the upbringing and education for the ... children under her control.” She also argued that the provision in the judgment that ordered DHR to supervise the custodial arrangement for one year was “invalid and unconstitutional as it places undue state interference into the life of a fit custodial guardian.” Finally, the paternal aunt argued that the visitation award to the maternal aunt and the maternal uncle was invalid because the maternal aunt and the maternal uncle had not requested an award of' visitation with the children, because there is no law that allows for visitation by an aunt and an uncle, and because the maternal aunt and the maternal uncle lacked standing to assert visitation rights with the children. The juvenile court denied the paternal aunt’s postjudgment motion. The paternal aunt and the paternal uncle timely appealed; because the juvenile court awarded custody solely to the paternal aunt, we will address the appellants’ arguments as they relate to the paternal aunt.[3]
On appeal, the paternal aunt raises three issues for this court’s review, which she frames as follows: (1) whether the provision in the judgment that, she alleges, requires her to keep the children in public school for one year is unconstitutional; (2) whether the provision in the judgment that ordered DHR to supervise the custodial arrangement for one year is unconstitutional; and (3) whether the provision in the judgment allowing the maternal aunt and the maternal uncle visitation with the children was error.
Regarding the paternal aunt’s first argument — that the juvenile court’s judgment is unconstitutional because it requires her to keep the children in public school for one year — we note that the juvenile court’s judgment does not, in fact, require the paternal aunt to keep the children in public school for one year. The judgment specifically states that the paternal aunt may place the children in the school of her choosing but that, because of the emotional turmoil the children had experienced since the deaths of their parents, the paternal aunt could not homeschool the children for one year. At the trial in this matter, the paternal aunt stated that the children were excelling in public school and that she did not intend to homeschool the children. However, she did testify that she would like to enroll the children in a private school. Nothing in the juvenile court’s judgment prohibits the paternal aunt from enrolling the children in private school. Accordingly, because there is no provision in the juvenile court’s judgment that requires the paternal aunt to keep the children in public school for one year, the paternal aunt’s argument that such a provision is unconstitutional is not properly before this court.
Next, the paternal aunt argues that the requirement in the juvenile court’s judgment that DHR supervise the custodial arrangement for one year is unconstitutional because it places undue state inter *118 ference into the life of a fit custodial guardian. In support of her argument, the paternal aunt cites several general propositions of law from United States Supreme Court opinions such as Troxel v. Granville, 580 U.S. 57, 72-73, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (“[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a ‘better’ decision could be made.”), and Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (“It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.”). The paternal aunt argues that the evidence in the record reflected that she was a fit custodian and that, in the absence of evidence indicating that she was unfit, the juvenile court violated her constitutional rights by requiring DHR to maintain a supervisory role in the case.
However, the paternal aunt has not clearly set forth the constitutional right that she allegedly possesses that would prohibit a juvenile court in a dependency action from requiring DHR to maintain a supervisory role for one year after the disposition of the custody of the children. Furthermore, the paternal aunt has failed to apply the general propositions of law cited in her brief in a manner that would demonstrate that the juvenile court violated her constitutional rights. See Beachcroft Props., LLP v. City of Alabaster, 901 So.2d 703, 708 (Ala.2004) (“Authority supporting only ‘general propositions of law does not constitute a sufficient argument for reversal.”); and Elliott v. Bud’s Truck & Auto Repair, 656 So.2d 837, 838 (Ala.Civ.App.1995) (citing Liberty Loan Corp. of Gadsden v. Williams, 406 So.2d 988 (Ala.Civ.App.1981)) (“This court does not presume error. In order for this court to consider an error asserted on appeal, that error must be affirmatively demonstrated by the record.”). Accordingly, we affirm that part of the juvenile court’s judgment that ordered DHR to supervise the custodial arrangement for one year following the entry of the judgment.[4]
*119 Finally, the paternal aunt argues that the juvenile court’s award of visitation to the maternal aunt and the maternal uncle is error for several reasons: (1) because the maternal aunt and the maternal uncle did not seek visitation with the children as a form of alternate relief; (2) because there is no statutory basis for an award of visitation to an aunt and uncle; (3) because the maternal aunt and the maternal uncle lacked standing to petition for visitation with the children; and (4) because the amount of visitation awarded to the maternal aunt and the maternal uncle is contrary to the best interests of the children.[5]
Regarding the paternal aunt’s first assertion of error regarding the award of visitation to the maternal aunt and the maternal uncle, the paternal aunt’s argument consists of two sentences that state that the maternal aunt and the maternal uncle did not file a petition for visitation and that they did not ask for visitation during the final hearing. The paternal aunt wholly fails to cite any authority to support her argument that the award of visitation should be reversed on those grounds. Accordingly, we will not address that argument. See Rule 28(a)(10), Ala. R.App. P.; and Watson v. Whittington Real Estate, LLC, 16 So.3d 802, 809 (Ala.Civ.App.2009) (when the appellant failed to cite any legal authority to support a particular issue raised on appeal, this court held that the “issue presented] no ground upon which we may reverse the trial court’s judgment”).
We will consider the paternal aunt’s argument that there is no law that allows the maternal aunt and the maternal uncle to seek visitation with the children with the paternal aunt’s argument that the maternal aunt and the maternal uncle lacked standing to petition for visitation with the children. We agree that the Alabama Legislature has not provided aunts and uncles a statutory right to an award of visitation with a niece or nephew in a typical custody proceeding. However, this case stems from a dependency proceeding, not a custody proceeding.[6] In J.S.M. v. P.J., 902 So.2d 89 (Ala.Civ.App.2004), this court upheld an award of visitation to a nonparent who had filed a dependency petition seeking custody of the child, without specifically seeking an award of visitation, based in part on the authority of former § 12-15-71 (a)(4), Ala.Code 1975, which authorized a juvenile court, after adjudicating a child to be dependent, to “[m]ake any other order as the court in its discretion shall deem to be for the welfare and best interests of the child.” Although § 12-15-71(a)(4) was repealed by the Alabama Juvenile Justice Act (“the AJJA”), § 12-15-101 et seq., Ala.Code 1975, and renumbered in the AJJA at § 12-15-314(a)(4), Ala. Code 1975, effective January 1, 2009, see Act No. 2008-277, Ala. Acts 2008, § 12-15-314(a)(4) is nearly identical to former *120 § 12-15-71(a)(4). See § 12-15-314(a)(4) (allowing a juvenile court, after adjudicating a child dependent, to “[m]ake any other order as the juvenile court in its discretion shall deem to be for the welfare and best interests of the child”). In J.S.M., this court held that an award of visitation to the nonparent was appropriate after the child was adjudicated dependent “if the [juvenile] court determined such an award to be in the child’s best interests.” 902 So.2d at 95. Accordingly, we conclude that, pursuant to § 12-15-314(a)(4), the juvenile court could have awarded the maternal aunt and the maternal uncle visitation with the children if the juvenile court determined that such an award was in the best interests of the children.
Therefore, we will now consider the paternal aunt’s final argument that the record did not support a determination that an award of visitation to the maternal aunt and the maternal uncle was in the best interests of the children.
The record on appeal reveals the following. The maternal aunt and the maternal uncle live in Florala, Alabama, which is approximately four hours from the children’s home in Anniston. The maternal aunt admitted that her family was not “close-knit” and that all of her sisters, including a sister that lived near the children, had “serious problems.” The evidence indicated that, at the time of the mother’s and the father’s deaths, the maternal aunt had met the children, who were approximately 8 years old and 10 years old, only on 1 prior occasion, approximately 3 months before the mother and the father died. The maternal uncle admitted that he did not meet the children until after the mother and the father died. However, the record indicated that the maternal aunt and the maternal uncle had been able to develop a relationship with the children during three visits arranged by Donna Crow, the children’s counselor, and DHR. In its judgment, the juvenile court found that the maternal aunt and the maternal uncle “clearly love” the children and desire a relationship with them. That finding is supported by the evidence. The record indicates that DHR approved the home of the maternal aunt and the maternal uncle and that DHR had no safety concerns regarding them home.
Crow testified that she had recommended that visitation betwéen the children and the maternal aunt and the maternal uncle be suspended after their third visit based on unspecified allegations made by the children. The maternal aunt and the maternal uncle testified that they had learned that them visits with the children had been suspended the day before trial, and the maternal uncle stated that he was flabbergasted that their visitation had been suspended because he thought the visits had gone exceptionally well. Both the maternal aunt and the maternal uncle denied making any negative remarks about the paternal aunt during their visits with the children.
However, Crow testified that the children could resume visitation with the maternal aunt and the maternal uncle once the children felt that they were not going to be taken from the paternal aunt’s home. Crow recommended that visits begin at her office and move to the paternal aunt’s home, where the children could see the paternal aunt and the maternal aunt and the maternal uncle being friendly to one another. Although the record indicated that there were communication issues between the paternal aunt and the maternal aunt and the maternal uncle, the paternal aunt testified that she had no problem with the maternal aunt or the maternal uncle and that, if she were awarded custody, she would “open her doors” to the maternal aunt and the maternal uncle. The mater *121 nal aunt stated that, if she was not awarded custody of the children, she would like as much visitation with the children as the paternal aunt would allow. The paternal aunt testified that she supported the children’s having a relationship with the maternal aunt and the maternal uncle. The guardian ad litem of the children also stated that she hoped that the maternal aunt and the maternal uncle could become part of the children’s lives.
This court’s standard of reviewing visitation awards in a dependency action is well settled.
“In awarding visitation rights relating to the disposition of a ‘dependent child’ pursuant to [former] § 12-15-71(a) [repealed by the AJJA and replaced by § 12-15-314(a) ], the trial court is guided by the ‘best interests of the child’ standard. See [former] § 12-15-71(a)(4) [repealed by the AJJA and replaced by § 12-15-314(a)(4) ] (‘If a child is found to be dependent, the court may make any of the following orders of disposition to protect the welfare of the child: ... (4) Make any ... order as the court in its discretion shall deem to be for the welfare and best interests of the child.’).
“ ‘ “ ‘The determination of proper visitation ... is within the sound discretion of the trial court, and that court’s determination should not be reversed absent a showing of an abuse of discretion.’ Ex parte Bland, 796 So.2d 340 (Ala.2000). ‘[C]ases in Alabama have consistently held that the primary consideration in setting visitation rights is the best interests and welfare of the child. Furthermore, each child visitation case must be decided on its own facts and circumstances.’ Fanning v. Fanning, 504 So.2d 737, 739 (Ala.Civ.App.1987) (citations omitted). ‘When the issue of visitation is determined after oral proceedings, the trial court’s determination of the issue will not be disturbed absent an abuse of discretion or a showing that it is plainly in error. Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App.1987).’ Dominick v. Dominick, 622 So.2d 402, 403 (Ala.Civ.App.1993).”
“‘K.L.U. v. M.C., 809 So.2d 837, 840-41 (Ala.Civ.App.2001).’
“K.L.R. v. L.C.R., 854 So.2d [124,] 132 [ (Ala.Civ.App.2003) ].”
K.B. v. Cleburne County Dep’t of Human Res., 897 So.2d 379, 387-88 (Ala.Civ.App.2004).
Based on our review of the réc-ord, we cannot conclude that the juvenile court exceeded its discretion by awarding the maternal aunt and the maternal uncle visitation with the children. Although it was undisputed that the children did not have a close relationship with the maternal aunt or the maternal uncle before the mother and the father died, the juvenile court could have concluded, especially in light of the maternal aunt’s testimony that her sister that lived near the children had serious problems, that it was in the best interests of the children to maintain ties to their deceased mother’s family through visitation with the maternal aunt and the maternal uncle.[7]
The paternal aunt also argues that the amount of visitation awarded to the maternal aunt and the maternal uncle was *122 error because it was contrary to Crow’s recommendation that visitation begin in an environment where the children felt safe. Although the juvenile court awarded the maternal aunt and the maternal uncle considerable visitation with the children, the juvenile court included in its judgment certain provisions to protect the best interests of the children that indicate that Crow’s recommendations were adequately considered. For example, the juvenile court ordered that Crow begin working with the children to prepare them for visitation with the maternal aunt and the maternal uncle and that visitation with the maternal aunt and the maternal uncle was not to begin until the children were adequately prepared by Crow. The juvenile court also held that the maternal aunt and the maternal uncle shall participate in counseling if Crow recommended that they do so before visitation with the children began again. Therefore, we cannot conclude that the visitation awarded to the maternal aunt and the maternal uncle was contrary to the recommendation made by Crow.
Accordingly, we conclude that the judgment of the juvenile court is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs specially.
MOORE, J., concurs in part and dissents in part, with writing.

. The juvenile court’s order awarded custody solely to the paternal aunt; the juvenile court did not mention the paternal uncle in its custody award.

. The paternal uncle did not join in the post-judgment motion.

. The paternal uncle is listed as an appellant. However, as noted earlier, the juvenile court did not award custody to the paternal uncle. See supra note 1. We do not address whether the paternal uncle has standing to appeal.

. We note that none of the cases relied on by Judge Moore in his dissent as to this issue, in which he asserts that the judgment of the juvenile court should be reversed as to this issue, are cited by the paternal aunt in her brief to this court. Our caselaw creates no exception for addressing constitutional arguments that are supported only by general propositions of law. See Limbaugh v. Limbaugh, 574 So.2d 804, 805 (Ala.Civ.App.1990) (affirming judgment of the trial court when the husband's general propositions of law cited regarding due process and civil rights were "not cited in such a way as to support the husband’s contention of error on appeal”). Reversing the judgment of the juvenile court based on arguments that are not contained in the paternal aunt’s brief on appeal unfairly penalizes the appellees by denying them an opportunity to respond to those arguments. Although none of the appellees filed an appellate brief with this court, we cannot assume that they would not have done so had the paternal aunt properly argued the constitutional issues raised in her brief.
Furthermore, we conclude that the juvenile court had the authority to order DHR to supervise the custodial arrangement for one year under the provisions of § 12-15-314(a)(4), Ala.Code 1975. Because of the contentious nature of these proceedings, which was a direct result of the manner of the mother’s death, the juvenile court could have concluded that the best interests of the children would be served by allowing DHR to maintain a supervisory role of the custodial arrangement for a definite period. See S.P. v. E.T., 957 So.2d 1127, 1133 (Ala.Civ.App.2005) (discussing the applicable custody-modification standard in ongoing dependency cases and stating that "it is not uncommon for a juvenile court to require that DHR remain involved in a case for various reasons and at various levels after the entry of a 'final' dispo-sitional order” in order to further the best interest of a dependent child).

. We reject any assertion made by Judge Moore in his dissent as to this issue that the paternal aunt set forth an argument in her brief that the visitation provisions violate her constitutional right to decide visitation matters for the children. No such assertion is made by the paternal aunt in her brief on appeal. We can only assume that he considers two quotations taken from Troxel v. Granville, 530 U.S. at 72-73 and 78, with no argument whatsoever regarding the constitutionality of the award of visitation, as an "argument” sufficient to merit our consideration.

. Although a dispositional custody award was entered, the juvenile court had authority to enter the custody award only because it determined that the children were dependent. See § 12-15-310, Ala.Code 1975 (if a juvenile court finds that a dependency petition has not been proven by clear and convincing evidence, the juvenile court must dismiss the petition).

. It is not for this court to determine whether visitation with the maternal aunt and the maternal uncle is in the best interests of the children. The court is limited to reviewing whether a juvenile court exceeded its discretion by determining that an award of visitation was in the best interests of the children. See K.B. v. Cleburne County Dep’t of Human Res., 897 So.2d 379, 387-88 (Ala.Civ.App.2004).