MAIN, Justice
(dissenting).
The Alabama Grandparent Visitation Act, § 30-3-4.1, Ala.Code 1975 (“the Act”), revolves around the relationship of three distinct groups of people: children, parents, and grandparents. In its present form, the Act is a legislative attempt, when visitation is contested, to determine the best interests of the children — not the parents or the grandparents. The main opinion has focused on the rights of the parents rather than on the best interests of the children.
Historically, minor children and mentally incompetent persons have been treated differently from competent adults, both criminally and civilly. The state necessarily injects itself into the affairs of children and the mentally incompetent when they are in need of protection because their developmental differences and their environmental restraints render them more vulnerable than competent adults. Children do not make decisions in the same manner as do adults because children are not as neurologically developed and are *679 not free to “escape” their environment. It is clear that the law treats children differently than it treats adults; the question thus becomes: What is the appropriate standard in interpreting statutes concerned with children? As noted in the few examples that follow, Alabama statutes and caselaw from both this Court and the United States Supreme Court treat juveniles differently from adults in both civil and criminal matters.
(1) Juveniles are not eligible for the death penalty. See Ex parte Adams, 955 So.2d 1106 (Ala.2005), relying on Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding unconstitutional the imposition of the death penalty for capital-murder defendants when the murder was committed before the defendant had reached the age of 18).
(2) The United States Supreme Court recently held that imposing a penalty of life imprisonment without the possibility of parole on a juvenile was unconstitutional for offenses other than homicide offenses:
“Roper [v. Simmons, 543 U.S. 551 (2005),] established that because juveniles have lessened culpability they are less deserving of the most severe punishments. 543 U.S., at 569. As compared to adults, juveniles have a ‘ “lack of maturity and an underdeveloped sense of responsibility” they ‘are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure’; and their characters are ‘not as well formed.’ Id., at 569-570. These salient characteristics mean that ‘[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.’ Id., at 573. Accordingly, ‘juvenile offenders cannot with reliability be classified among the worst offenders.’ Id., at 569. A juvenile is not absolved of responsibility for his actions, but his transgression ‘is not as morally reprehensible as that of an adult.’ Thompson [v. Oklahoma, 487 U.S. 815,] 835 [(1988)] (plurality opinion).
“No recent data provide reason to reconsider the Court’s observations in Roper about the nature of juveniles. As petitioner’s amici point out, developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence. See Brief for American Medical Association et al. as Amici Curiae 16-24; Brief for American Psychological Association et al. as Amici Curiae 22-27. Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of ‘irretrievably depraved character’ than are the actions of adults. Roper, 543 U.S., at 570. It remains true that ‘[fjrom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor’s character deficiencies will be reformed.’ Ibid. These matters relate to the status of the offenders in question; and it is relevant to consider next the nature of the offenses to which this harsh penalty might apply.
[[Image here]]
“It follows that, when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability. The age of the offender and the nature of the crime each bear on the analysis.”
Graham v. Florida, — U.S. -, -, 130 S.Ct. 2011, 2026, 176 L.Ed.2d 825 (2010).
*680 (3) A separate advisement of rights applies for juveniles than for adults with regard to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rights. See Ex parte Hall, 863 So.2d 1079 (Ala.2003), and § 12-15-202, Ala.Code 1975.
(4) An individual under a certain age may apply for treatment by the courts as a youthful offender. See § 15-19-1 et seq., Ala. Code 1975.
(5) Age-based restrictions exist as to when an individual is legally permitted to purchase and to consume alcohol products. See § 28-1-5, Ala.Code 1975. Additionally, adults may face criminal charges with regard to providing alcohol to minors at open house parties. See 13A-11-10.1, Ala. Code 1975. See also Owens v. State, 19 So.3d 252 (Ala.Crim.App.2009) (parents convicted of violation of § 13A-11-10.1 for hosting party at their residence and on their property at which minors consumed alcohol).
(6) Age-based restrictions exist as to when an individual is permitted to lawfully operate motorized vehicles on the roadways. See §§ 32-6-3(a), 32-6-7, 32-6-7.2, 32-6-8, Ala. Code 1975.
(7) Age-based restrictions apply to the ability to contract to marriage: the minimum age at which a person may contract to marriage is 16 years, see § 30-1-4, Ala.Code 1975, and the consent of the parents or a guardian is required for individuals at least 16 years of age and under 18 years, see § 30-1-5, Ala.Code 1975.
(8) Courts may order medical treatment for a child in contravention of the parents’ religious beliefs when the child’s health is at stake. § 26-14-7.2, Ala.Code 1975.
(9) With regard to child support, different requirements and provisions apply for children under the age of 19 and those over the age of 19. See Ex parte Bayliss, 550 So.2d 986 (Ala.1989), and its progeny.
Furthermore, Alabama statutes and caselaw have historically governed certain aspects of the parent-child relationship, and the standard applied by our courts in these cases has consistently been the best interests of the child:
(1) In terminating parental rights, the overriding consideration is the best interests of the child. Ex parte J.R., 896 So.2d 416 (Ala.2004) (best-interests-of-the-child standard governs the termination of parental rights).
(2) In dependency proceedings, the appropriate standard to be applied is the best interests of the child. D.B. v. K.B., 67 So.3d 114, 120 (Ala.Civ.App.2011) (applying § 12-15-314(a)(4), Ala.Code 1975, “allowing a juvenile court, after adjudicating a child dependent, to ‘[m]ake any other order as the juvenile court in its discretion shall deem to be for the welfare and best interests of the child’ ”).
(3) In many custody proceedings, the appropriate standard to be applied is the best interests of the child. Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996) (best-interests-of-the-child standard applied in original custody determination); Ex parte Blackstock, 47 So.3d 801 (Ala.2009) (if pri- or judgment awarded joint physical custody, best-interests-of-the-child standard applies in subsequent custody-modification proceeding); Ex parte Murphy, 670 So.2d 51 (Ala.1995) (modification of prior custody award requires that party seeking modification prove not only a material change in circumstances, but also that the modification will materially promote the best interests of the child, thus offsetting the disruptive effect of uprooting the child).
(4) In adoption proceedings, the appropriate standard to be applied is the best *681 interests of the child. §§ 26-10A-24 and -25, Ala.Code 1975.
(5) When a minor child seeks an abortion, the courts apply the best-interests-of-the-minor standard to determine whether the minor must first obtain parental consent. See § 26-21-4(f)(2), Ala.Code 1975.
The main opinion focuses on the liberty interest of the parents, almost as though the children were chattel. I would focus on the best interests of the child.
Moreover, it is a well settled rule of statutory construction that when this Court reviews the constitutionality of a statute, it should first seek to uphold the statute.
“In Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala.2000), this Court restated the long-standing rules governing review of acts of the Legislature under constitutional attack:
“1 “In reviewing [a question regarding] the constitutionality of a statute, we ‘approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.’” Moore v. Mobile Infirmary Ass’n, 592 So.2d 156, 159 (Ala.1991) (quoting Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944)). Moreover, “[w]here the validity of a statute is assailed and there are two possible interpretations, by one of which the statute would be unconstitutional and by the other would be valid, the courts should adopt the construction [that] would uphold it.” McAdory, 246 Ala. at 10, 18 So.2d at 815. In McAdory, this Court further stated:
“ ‘ “[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and in-tendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.”
“ ‘246 Ala. at 9, 18 So.2d at 815 (citation omitted). We must afford the Legislature the highest degree of deference, and construe its acts as constitutional if their language so permits. Id.’”
Rice v. English, 835 So.2d 157, 163-64 (Ala.2002).
In E.H.G. v. E.R.G., 73 So.3d 614, 629 (Ala.Civ.App.2010), the Alabama Court of Civil Appeals upheld the Act against a constitutional challenge. However, the Court of Civil Appeals engrafted on the Act a standard of “harm” that is not found in the statute.
“As presently drafted, the Act requires a trial court in a grandparent-visitation case to consider ‘[o]ther relevant factors in the particular circumstances.... ’ Ala.Code 1975, § 30-3-4.1 (d)(6). Since we hold that a showing of harm to the child resulting from the denial of visitation is a prerequisite to any award of visitation under the Act, we conclude that subsection (d)(6) necessarily encompasses that showing as a ‘relevant factor’ and that the Act is, therefore, facially valid. See L.B.S. [v. L.M.S.], 826 So.2d [178,] 185 [ (Ala.Civ.App.2002) ] (holding that the judiciary could adopt a construction of a statute that would uphold its constitutionality). We emphasize, however, that the showing of harm is not to be weighed along with the other fac *682 tors in § 30-3-4.1(d)(6). Rather, ... a court considering a petition for grandparent visitation must first presume the correctness of the decision of a fit, natural, custodial parent as to grandparent visitation and then determine whether the petitioning grandparent has presented clear and convincing evidence that the denial of the requested visitation will harm the child. If so, the court may then weigh the other statutory factors to determine the mode and extent of grandparent visitation necessary to alleviate the harm to the child without further infringing on the fundamental rights of the parents.”
73 So.3d at 629 (emphasis added). That court thus applied a standard that did not exist at the time of trial as the basis for reversing the trial court’s judgment on a ground the trial court never considered, concluding that “[bjecause the trial court awarded visitation to the paternal grandparents without the requisite showing of harm, the trial court unconstitutionally applied the Act to the parents.” 73 So.3d at 630. In rejecting the best-interests-of-the-child standard as written by the legislature into the Act and grafting onto it a standard of harm to the child, the Court of Civil Appeals chose to depart from its prior decisions in Dodd v. Burleson, 932 So.2d 912 (Ala.Civ.App.2005), and Dodd v. Burleson, 967 So.2d 715 (Ala.Civ.App.2007), both plurality decisions. Instead, the Court of Civil Appeals relied heavily on a case decided by the Supreme Court of Tennessee, Hawk v. Hawk, 855 S.W.2d 573 (Tenn.1993), in which the court invalidated Tennessee’s grandparent-visitation statute because it was inconsistent with Tennessee’s constitution.
The Court of Civil Appeals’ reasoning in E.H.G. was also grounded in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), a plurality opinion in which the United States Supreme Court reviewed a Washington state statute that provided that any person could petition a court for visitation with a child at any time, and that the court could award visitation rights to any person when such visitation “may serve the best interest of the child.” § 26.10.160(3), Revised Code of Washington. The plurality found the Washington state nonparental-visitation statute overly broad and concluded that it unconstitutionally infringed on the petitioner’s fundamental parental right to make decisions regarding the care, custody, and control of her children. The problem, the plurality stated, was not that the court had intervened, “but that when it did so, it gave no special weight at all to [the parent’s] determination of her daughters’ best interests.” 530 U.S. at 68. The plurality opinion in Troxel did not establish a “harm” standard and, in fact, did not consider it.
“Because we rest our decision on the sweeping breadth of § 26.10.160(3) and the application of that broad, unlimited power in this case, we do not consider the primary constitutional question passed on by the Washington Supreme Court — whether the Due Process Clause requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation. We do not, and need not, define today the precise scope of the parental due process right in the visitation context. In this respect, we agree with Justice KENNEDY that the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best ‘elaborated with care.’ Post, at [101] (dissenting opinion). Because much state-court adjudication in this context occurs on a case-by-case basis, we would *683 be hesitant to hold that specific nonpa-rental visitation statutes violate the Due Process Clause as a per se matter.”
530 U.S. at 73 (footnote omitted).
In his dissent in Troxel, Justice Stevens not only noted that it was unnecessary for the Court to consider a “harm” standard in that case, but also concluded that a showing of harm is not required for a grandparent-visitation statute to pass constitutional muster.
“The second key aspect of the Washington Supreme Court’s holding — that the Federal Constitution requires a showing of actual or potential ‘harm’ to the child before a court may order visitation continued over a parent’s objections — finds no support in this Court’s case law. While, as the Court recognizes, the Federal Constitution certainly protects the parent-child relationship from arbitrary impairment by the State, see infra this page and [88-89,] we have never held that the parent’s liberty interest in this relationship is so inflexible as to establish a rigid constitutional shield, protecting every arbitra,ry parental decision from, any challenge absent a threshold finding of harm.”
530 U.S. at 85-86 (Stevens, J., dissenting) (emphasis added). Justice Kennedy came to a similar conclusion in his dissent in Troxel, 530 U.S. at 93 (Kennedy, J., dissenting).
Because Troxel was a plurality decision and because seven of nine Justices found it unnecessary to address the application of a harm standard, Troxel cannot be considered the source of any holding that a grandparent-visitation statute can be considered constitutional only if it requires proof that a denial of visitation would harm the child. The flaw in the Washington state statute pointed out by the plurality in Troxel was that “a parent’s decision that visitation would not be in the child’s best interest [was] accorded no deference.” 530 U.S. at 67.
The main opinion emphasizes “[t]he substantive fundamental right of parents to make decisions regarding the ‘care, custody, and control’ of their children.” 73 So.3d at 644 (quoting Troxel, 530 U.S. at 66). The main opinion concludes that the Act is unconstitutional in its entirety because no part of the Act “defers to the fundamental right of the parent or to the presumption in favor of a parent’s decisions regarding grandparent visitation.” 73 So.3d at 650. I disagree. I would hold that the Act is not unconstitutional on its face and that a determination regarding whether visitation with a grandparent would be in a child’s best interests should be made on a case-by-case basis. The Act, as originally enacted in 1999, provided, in pertinent part:
“(d) Upon the filing of an original action or upon intervention in an existing proceeding pursuant to subsections (b) and (c), the court shall grant any grandparent of the child reasonable visitation rights if the court finds that the best interests of the child would be served by the visitation. In determining the best interest of the child, the court shall consider the following:
[[Image here]]
“(6) Other relevant factors in the particular circumstances.
“(e) The court shall make specific written findings of fact in support of its rulings. There shall be a rebuttable presumption in favor of visitation by any grandparent....”
§ 30-3-4.1, Ala.Code 1975. Effective September 1, 2003, the legislature amended the Act. Pursuant to the 2003 amendment, the above-quoted portion of the Act now provides:
*684 “(d) Upon the filing of an original action or upon intervention in an existing proceeding pursuant to subsections (b) and (c), the court shall determine if visitation by the grandparent is in the best interests of the child. Visitation shall not be granted if the visitation would endanger the physical health of the child or impair the emotional development of the child. In determining the best interests of the child, the court shall consider the following:
[[Image here]]
“(6) Other relevant factors in the particular circumstances, including the wishes of any parent who is living.
“(e) The court shall make specific written findings of fact in support of its rulings.... ”
§ 30-3-4.1, Ala.Code 1975. The 2003 amendment was responsive to many of the factors discussed in the plurality decision in Troxel. For example, the amendment added to § 30-3-4.1(d) a prohibition against grandparental visitation if that visitation would endanger the child’s physical health or impair the child’s emotional development.[25] The amendment also provides that the trial court is to consider the parent’s wishes among the other factors for the court’s consideration in determining whether grandparent visitation is in the child’s best interest. Additionally, the amendment removed the rebuttable presumption in favor of grandparent visitation from § 30-3-4.1(e).
For the foregoing reasons and in the face of existing precedent from this Court and from the Court of Civil Appeals and the lack of a requirement that courts consider a harm standard in evaluating the grandparent-visitation issue, I see no need to declare the Act unconstitutional. I agree with Judge Pittman, who, in his dissent in E.H.G., stated:
“I dissent. The main opinion represents a complete departure from the analytical framework I espoused in the main opinion in Dodd v. Burleson, 932 So.2d 912 (Ala.Civ.App.2005), appeal after remand, 967 So.2d 715 (Ala.Civ.App.2007). As I made clear in Dodd, Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), does not stand for the proposition that states must adopt a harm standard in order for their grandparent-visitation statutes to conform with due-process guaranties afforded by the Fourteenth Amendment. Since Troxel was decided, courts in a number of states have determined — consistent with the main opinion in Dodd— that harm to a child is not a constitutionally required prerequisite for a grandparent-visitation award contrary to the wishes of fit parents. In re Adoption of C.A., 137 P.3d 318, 326-27 (Colo.2006); Vibbert v. Vibbert, 144 S.W.3d 292, 294-95 (Ky.Ct.App.2004); Rideout v. Riendeau, 761 A.2d 291, 300-01 (Me.2000); Harrold v. Collier, 107 Ohio St.3d 44, 52, 836 N.E.2d 1165, 1172 (2005) (‘nothing in Troxel suggests that a parent’s wishes should be placed before a child’s best interest’); and Hiller v. Fausey, 588 Pa. 342, 363-66, 904 A.2d 875, 888-90 (2006).”[26]
*685 I would hold that the child’s best interests, not the “interests” of the parents, is the determinative standard for deciding whether to award visitation between a grandparent and a grandchild in the face of the contrary wishes of fit parents. The Act contains both a determination that a court should not require visitation with a child’s grandparents if the child would be physically or emotionally harmed by the visitation, § 30 — 3—4.1(d), and a requirement that the trial court in deciding whether to order visitation consider “the wishes of any parent who is living,” § 30-3^4.1(d)(6). Therefore, in my view, the Act is constitutional. In the case before us, the trial court reviewed all the factors in § 30-3^.1(d), including the factors that protect the right of the parents and the factors that determine the best interests of the children. The trial court considered the wishes of the parents, both of whom are living, and found that visitation would not endanger the physical health of the children or impair their emotional development. Moreover, the guardian ad litem appointed for the children submitted a written report finding that continued alienation from the grandparents was not in the best interests of the children. Pursuant to the Act, the trial court then ordered visitation between the grandparents and the children.
I agree that a parent’s right to the care, custody, and control of his or her child is fundamental. However, that right is not absolute. As Justice Bolin, writing for the Court, so aptly stated in Ex parte M.D.C., 39 So.3d 1117, 1128 (Ala.2009):
“A parent has a fundamental liberty interest in the care, custody, and management of his or her child. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). However, this interest is not absolute; it ‘is limited by the compelling government interest in the protection of children — particularly where the children need to be protected from their own parents.’ Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir.1997).”
As described heretofore, courts do intervene to protect the rights of children who, unlike adults, cannot protect themselves. The government has no role whatsoever in the relationship between parents and grandparents and has no right to interfere with their behavior, because they are adults. The government does have a role protecting a child if an adult has disregarded his or her responsibility toward that child. Unlike the main opinion, I do not conclude that the Act is unconstitutional on its face. I believe the focus in grandparent visitation, as it is in other areas of juvenile and domestic-relations law in Alabama, should be on the children and that the appropriate standard is the best interests of the child.
I would affirm that portion of the judgment of the Court of Civil Appeals that concludes that the Act is not unconstitutional. I would reverse that portion of the judgment that judicially engrafted a harm standard into the Act and reversed the judgment of the trial court, and I would remand the case to the Court of Civil Appeals for that court to affirm the trial court’s judgment awarding visitation to the grandparents. Therefore, I respectfully dissent.
COBB, C.J., concurs.

. I recognize the distinction between the refusal to grant visitation if visitation would harm the child and the granting of visitation against the parent's wishes if the deprivation of visitation would cause harm to the child. The amendment to the Act is couched in terms of the former, whereas the discussion in Troxel and its progeny addresses the latter.

. According to a summary in the grandparents' reply brief, 18 states utilize the harm standard. A number of other states have rejected the harm standard or utilize the best-interests-of-the-child standard.